IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKANSAS
CIVIL DIVISION

DR. JAMES H. FOWLER, M.D., F. A. C. S.                    PLAINTIFF

VS.

HELENA REGIONAL MEDICAL CENTER AND
TOM KINNEBREW, CEO; DR. SCOTT HALL,
M.D., CHIEF OF STAFF, CHAIRPERSON;
DR. SANDRA KOCHANSKI, M.D.,CHIEF OF STAFF ELECT
AND CREDENTIALS ADVISOR; DR. GEORGE KONTOS, M.D.,
CHIEF OF SURGERY; DR. L. J. PATRICK BELL, II, D.O., CHIEF
OF MEDICINE; DR. THOMAS BAILEY
M.D., IMMEDIATE PAST CHIEF OF STAFF;                    DEFENDANTS

*CV-2006-88*

## PLAINTIFF'S COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION AND FOR DAMAGES

The Plaintiff, James H. Fowler, M.D. respectfully comes before this Court by and through his attorneys, Charles P. Allen, and for his Complaint states:

I.    **Parties.**

1.    Plaintiff is a citizen and resident of Phillips County, Arkansas. All of the Defendants, Dr. Tom Kinnebrew, Dr. Scott Hall, M.D., Dr. Sandra Kochanski, M.D. Dr. George Kontos, M.D. Dr. L. J. Patrick Bell, M.D. and Dr. Thomas Bailey, M.D. are citizens and resident of Phillips County, Arkansas and the Defendants are all members of the Medical Executive Committee, hereinafter referred to as the MEC. That Tom Kinnebrew is the Chief Executive Officer of Helena Regional Medical Center; that Dr. Scott M. Hall is Chief of Staff and Chairperson; that Dr. Sandra Kochanski is Chief of Staff Elect and Credentials Advisor; that Dr. George Kontos is Chief of Surgery; that Dr. L. J. Patrick Bell, II is Chief of Medicine; and that Dr. Thomas Bailey is Immediate Past Chief of Staff.

II.    **Jurisdiction.**

FILED
AT 11:25 O'Clock A M

APR 1 5 2006

WANDA W. MCINTOSH
COUNTY CIRCUIT CLERK

d. 4

3.     Plaintiff has filed this instant action to address violations of his rights under the Helena Regional Medical Center, Medical Staff Bylaws/Rules and Regulations, the Arkansas Civil Rights Act and for violation of his constitutional rights of due process and equal protection under the law.

4.     Plaintiff brings this action arising out of his contractual employment relationship with Defendant Helena Regional Medical Center.  Plaintiff  also seeks damages from Defendants for their wrongful conduct to date.

5.     This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties hereto pursuant to Ark. Code Ann. § 16-4-101.

6.     Venue is appropriate in this Court.

III    **Factual Allegations**.

7.     That on or about March 9, 2004, the Plaintiff executed a Recruitment Agreement with the Phillips County Corporation on behalf of the Helena Regional Medical Center.  That the Plaintiff has always had, up until March 10, 2006, full clinical privileges and medical staff membership with the Helena Regional Medical Center until those rights were suspended by virtue of a letter dated March 10, 2006, a copy of which is attached hereto, marked Exhibit "A".  Incidentally, said letter was addressed to "William Fowler, M.D.".  Plaintiff has no knowledge of a "William Fowler, M.D.".

8.     As part of his employment and by virtue thereof, the Plaintiff is entitled to the due process established by the Medical Staff Bylaws/Rules and Regulations adopted by the Helena Regional Medical Center.  Article 8 of the Medical Staff Bylaws/Rules and Regulations of the Helena Regional Medical Center which is germane to the issues involved in this petition is attached hereto, marked Exhibit "B."

2

9.    As part of his employment and by virtue thereof, Plaintiff acknowledges his responsibility to comply with the Medical Staff Bylaws/Rules and Regulations adopted by the Helena Regional Medical Center.

10.    Under the Medical Staff Bylaws/Rules and Regulations, a suspension of privileges is an adverse action which "shall not take effect and shall not be considered final until the board takes final action." The Bylaws specifically provide that in the event of an adverse action, an aggrieved party will be entitled to a fair hearing, which Fair Hearing Plan is incorporated into the Medical Staff Bylaws. The letter submitted to Dr. Fowler attempts to effectuate an immediate suspension of clinical privilege and medical staff membership. Pursuant to its own provisions, Defendants are not entitled to an immediate action and Plaintiff is entitled to a preliminary injunction to avoid the risk of irreparable harm to his professional reputation and business.

11.    Prior to December 1, 2005, the hospital conducted a peer review of four (4) specific patients of the Plaintiff. In addition, one of the patient cases under review was considered and the Arkansas State Medical Board determined that there was no evidence of a violation of the Arkansas Medical Practices Act. A copy of the decision of the Arkansas State Medical Board will be withheld pending a protective Order from the Court in order to protect the privacy of the Patient.

12.    That prior to March 8, 2006, a second Peer Review Report was issued by an unknown physician. On March 8, 2006, the Defendant, Tom Kinnebrew, CEO, and the Defendant, Dr. Scott Hall, M.D., Chief of Staff, approached the Plaintiff and as a result of that meeting the Plaintiff was advised that his hospital and surgical privileges were suspended. In addition he was advised that there would be a meeting before the MEC,

3

consisting of all of the above Defendants, at 7 o'clock a.m. on Friday, March 10, 2006. On

March 10, 2006, the MEC Board advised the Plaintiff in writing that pursuant to Section 8.9

of the Medical Staff Bylaws that he had been requested to appear at 7:00 a.m. on Friday,

March 10, 2006, for an interview. See Exhibit "A".

13. Article 8.9 of the Medical Staff Bylaws provides as follows:

## INFORMAL INTERVIEWS

When the MEC or Board is considering initiating an adverse action concerning a practitioner, it shall give the practitioner an opportunity for an interview. The interview shall not constitute a hearing, shall be preliminary in nature and shall not be conducted according to the procedural rules provided with respect to hearings. The practitioner shall be informed of the general nature of the proposed action and may present information relevant thereto. A summary records of said interview shall be made. No legal or other outside representative shall be permitted to participate for any party.

14. In direct violation of the Medical Staff Bylaws and its on procedure the MEC

suspended the Plaintiff, effective immediately. The only provisions contained in the Bylaws

which provide for summary suspension is Article 8.2 and the Criteria and Initiation is

defined as follows:

Notwithstanding the provisions of Section 8.1 above, whenever a practitioner's conduct may require that immediate action be taken to protect the life, well-being, health or safety of any patient, employee or other person, then the CEO in conjunction with the Chief of Staff or the Chair of the practitioner's department, shall have the authority to summarily suspend all of any portion of the practitioner's clinical privileges immediately upon imposition. The CEO shall, on behalf of the imposer of such suspension, promptly give special notice of the suspension to the practitioner.

Immediately upon the imposition of summary suspension, the Chief of Staff shall designate a physician with appropriate clinical privileges to provide continued medical care for the suspended practitioner's patients still in the Hospital. The wishes of the patient shall be considered, if feasible, in the selection of the assigned physician.

It shall be the duty of all Medical Staff members to cooperate with the Chief of Staff

4

and the CEO in enforcing all suspension and in caring for the suspended practitioner's patients.

15.    Plaintiff submits that Section 8.2 A would involve somewhat of an emergency and immediate action would have to be taken to protect the life, well-being, health or safety of any patient, employee or other person. Such is not the case with Plaintiff nor was this the provision invoked by Defendants in issuing the suspension. The Plaintiff submits that during the course of the year 2006 he performed 63 surgical procedures at the Helena Regional Medical Center and that there was no emergency that would authorize or allow the Defendant, Tom Kinnebrew, CEO, or the Defendant, Dr. Scott Hall, M.D., to suspend his surgical and hospital privileges.

16.    In order to protect Plaintiff from his constitutional right of due process being violated, a temporary restraining order should issue ex parte to be followed by a hearing for preliminary injunction. Violation of the Plaintiff's constitutional rights is sufficient to show that irreparable harm would occur. Plaintiff was told on one hand by the MEC Board on March 10, 2006, that he was to appear for an 8.9 informal interview wherein no action would be taken. The proper procedure under the Bylaws would be that Plaintiff should have received notice of an intent to take an adverse action and been afforded his rights under The Fair Hearing Plan. Instead the MEC suspended his surgical privileges and medical staff privileges pursuant to 8.2A without him having the benefit of counsel, or any other due process of law or equal protection.

17.    Plaintiff was advised that one of the gentlemen allowed to be present prior to the meeting was the Hospital Attorney. This action by the MEC violated Section 8.9 of the Medical Staff Bylaws as well as the Plaintiff's Contractual and Constitutional rights, due process of law, equal protection and right to counsel. Such violation of Plaintiff's constitutional rights should be immediately enjoined by ex parte order pending a hearing

5

on preliminary and permanent injunctive relief.

18.    Plaintiff respectfully states that there was no emergency in effect on March 8, 2006, that would necessitate suspension of his clinic privileges. The MEC did not make such a finding, nor proceed under such provision.

19.    In this case, there is no allegation, and no evidence that Plaintiff did not meet the standard of care required as a physician at the Helena Regional Medical Center. The standard of care of a physician in the State of Arkansas is defined in AMI 1501 as follows:

> In treating a patient a physician must possess and using his best judgment, apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of his profession in good standing engaged in the same type of practice or specialty in the locality in which he practices or in a similar locality.

20.    On or about January 24, 2006, the Plaintiff received a letter from the Helena Regional Medical Center signed by the Defendants, Tom Kinnebrew and Dr. Scott Hall, M.D. authorizing · the  Plaintiff  the  additional  surgical  procedure  to  perform DACROCYSTORHINOSTOMY (DCR).  A copy of said letter is attached hereto marked exhibit "C".  The patient cases under review took place in 2005.  One Peer Review had already been made prior to the date of this letter and the Helena Regional Medical Center authorized the new procedure.

21.    The Plaintiff will be subjected to irreparable harm if this relief is not granted on a temporary basis. The livelihood of the Plaintiff depends upon his ability to conduct surgeries and have clinic privileges and medical staff membership. There is no way to assess or properly measure the extent of damages which could be done to Plaintiff's professional career based upon the improper action taken by Defendants.  The public ·interest is protected by granting this injunction due to the fact that the Plaintiff is the only active Otolaryngologist - Head & Neck Surgeon in Phillips County and this immediate area.

22.      That the Plaintiff has due process rights created and violated by his

6

contractual obligations to comply with the Medical Staff Bylaws/Rules and Regulations which were not followed in this instance, by the Arkansas Constitution, the United States Constitution, and by Arkansas Statutory provisions. The Plaintiff was denied his right to have a fair hearing pursuant to the Medical Staff Bylaws/Rules and Regulations and his right to counsel prior to implementation of a suspension of clinical privileges and medical staff membership.

IV.    **Prayer for Relief.**

23.    As relief for the above described violations, Plaintiff requests that this Court:

a.    Grant a declaratory judgment that the actions taken against Plaintiff in violation of his rights under his contract of employment, violated the Arkansas Civil Rights Act, were in violation of Plaintiff's constitutional rights, and his rights conferred to him under the Helena Regional Bylaws;

b.    Award Plaintiff back pay, compensatory damages, pre-judgment interest, post-judgment interest, punitive damages, attorneys' fees, costs, and other such sums as will make him whole for the unlawful and unconstitutional actions against him;

c.    Award Plaintiff compensatory damages for pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life due to the illegal acts taken against him;

d.    Award Plaintiff punitive damages for malice and reckless indifference to his federally and state protected rights;

e.    Enter a temporary restraining order, ex parte, against Defendants to nullify their illegal action to suspend Plaintiff's medical privileges and staff privileges;

f.    Enter a preliminary injunction against Defendants to enjoin them from taking an adverse action against Plaintiff without due process or without grounds as

7

provided for in the Bylaw and under his constitutional rights;

   g. Enter a permanent injunction against Defendants to enjoin them from taking an adverse action against Plaintiff without due process or without grounds as provided for in the Bylaw and under his constitutional rights;

   h. Grant Plaintiff a trial by jury.

  WHEREFORE, Plaintiff prays that this Complaint and Motion for Temporary Restraining Order and Preliminary Injunction be granted, that he be re-instated to his former clinic privileges, ex parte subject to a hearing on his request for preliminary and permanent injunction, and medical staff membership at the Helena Regional Medical Center, for loss of pay and restoration of benefits, if any, for costs, attorney's fees and for an injunction enjoining the Defendants from interfering with his ability to access these rights or to retaliate against him for having exercised those rights, and for all other proper relief to which he might be entitled in the premises.

         Respectfully Submitted,

         JAMES H. FOWLER, M.D.

         BY:_____
          CHARLES P. ALLEN, P.A.
          ATTORNEYS AT LAW
          P.O. BOX 2602
          WEST HELENA, AR 72390

STATE OR ARKANSAS
COUNTY OF PHILLIPS

  Comes Dr. James H. Fowler, M.D. and states on oath that the facts set forth in the above and foregoing Motion for are true and correct to the best of his knowledge and belief.

         JAMES H. FOWLER, M.D.

  Subscribed and sworn to before me this _14th_ day of March, 2006.

OFFICIAL SEAL
BEVERLY A. EARLS
NOTARY PUBLIC-ARKANSAS
LEE COUNTY
My Commission Expires 12-20-2011

         NOTARY PUBLIC

# Helena Regional
## MEDICAL ✚ CENTER
*Quality Care. Right Here.*

*Exhibit "A"*

March 10, 2006

***VIA HAND DELIVERY &***
***CERTIFIED U.S. MAIL***
***RETURN RECEIPT REQUESTED***

William Fowler, M.D.
819 B Newman Drive
Helena, AR 72342

***PRIVILEGED & CONFIDENTIAL***
***PEER REVIEW INFORMATION***

      Re:  Summary Suspension
           Conditions of Reinstatement

Dear Dr. Fowler:

As you know, following an outside review of a number of your surgical cases, you requested a second review of those cases. You further requested your office records accompany the Hospital records on these patients. The second review is complete, and we provided that to you on Wednesday, March 8, 2006, and pursuant to Section 8.9 of the Medical Staff Bylaws, the MEC requested that you appear for an interview at 7:00 a.m. today. You did appear before the MEC and provided both a written and oral response.

Nonetheless, based on these reviews, your responses to the same, and careful deliberation the MEC is not convinced that you continuously demonstrate current competence and professional clinical judgment with respect to the privileges previously granted and that an immediate suspension of your clinical privileges and medical staff membership, as set forth in Section 8.2(a) of the Medical Staff Bylaws, is necessary. This letter shall serve as notice to you as required by that section. Therefore, beginning immediately your privileges are hereby suspended.

This suspension may be removed upon your successful completion of a one (1) year fellowship in ear, nose and throat surgery at an institution approved by the MEC, and subsequently together with the positive recommendation of a proctor who has directly reviewed your surgical care of patients in this Hospital. The number of patients to be reviewed by the proctor will be determined at that time. Any costs and expenses associated with this required fellowship, and proctoring shall be your sole obligation.

Pursuant to Section 8.2(b) of the Medical Staff Bylaws, the MEC shall meet again to consider this matter and your response, if any, at its next regularly scheduled meeting on March 21, 2006 at which time it will determine whether to terminate, modify or ratify the suspension, or continue the suspension under the terms set forth above.

William Fowler, M.D.
03/10/2006
Page 2

Summary Suspension Notice
*Privileged & Confidential*
*Peer Review Information*

Should the MEC continue this suspension and/or recommend permanent revocation of Medical Staff membership and clinical privileges you will then be notified of your procedural rights under the Medical Staff Bylaws and Fair Hearing Plan.

-- Respectfully,

Scott Hall, M.D.
Chief of Staff

Tom Kinnebrew
Chief Executive Officer

cc:    Chief of Surgery

*Exhibit "T" "B*

## ARTICLE VIII
## CORRECTIVE ACTION

### 8.1 ROUTINE CORRECTIVE ACTION

#### 8.1(a) Criteria for Initiation

Whenever any professional conduct or behavior of a practitioner is detrimental to patient safety, to the delivery of quality patient care, is disruptive to hospital operations, or violates the provisions of these Bylaws, including the Medical Staff Rules and Regulations or duly adopted policies and procedures, then corrective action against such practitioner may be initiated by any officer of the Medical Staff, by the Chairperson of the Department of which the practitioner is a member, by the CEO, or the Board. Procedural guidelines from the Health Care Quality Improvement Act shall be followed and all corrective Action shall be taken in good faith in the interest of quality patient care. Within five (5) days of any decision to initiate corrective action, the Chief of Staff shall notify the CEO (or his/her designee) and the practitioner in writing.

#### 8.1(b) Request for Corrective Action

Members of the nursing staff, allied health professional, and hospital employees may not initiate corrective action, but they may request such action by submitting their request in writing to the MEC, and supported by reference to the specific activities or conduct which constitute the grounds for the request. The Chief of Staff shall promptly notify the CEO and the practitioner in writing of all requests for corrective action received by the committee; within five (5) days of the committee's decision on whether to initiate corrective action, the Chief of Staff shall inform the CEO and the practitioner in writing.

#### 8.1(c) Investigation by the Medical Executive Committee

If corrective action is initiated pursuant to 8.1(a) or (b), the MEC shall promptly begin to investigate the matter or shall appoint an ad hoc committee to investigate it. When the investigation involves an issue of practitioner impairment, the MEC shall assign the matter to an ad hoc committee of three (3) members who shall operate apart from this corrective action process, pursuant to the provisions of the Hospital's impaired practitioner policy.

#### 8.1(d) Medical Executive Committee Action

Within sixty (60) days following the decision to initiate corrective action, the MEC shall receipt of the report, the MEC shall take action. Its action shall be reported in writing to the CEO and the practitioner buy special notice and may include, but shall not be limited to:

(1) Rejecting the request for corrective action;

(2) Recusing itself from the matter and referring same to the Board without recommendation, together with a statement of its reasons for recusing itself from the matter, which reasons may include but are not limited to a conflict of interest due to direct economic competition or economic interdependence with the affected physician;

(3) Issuing a warning, admonishment, or a reprimand to which the practitioner may write a rebuttal, if he/she so desires;

(4) Recommending terms of probation, education, monitoring, or required consultation;

(5) Recommending reduction, suspension or revocation of clinical privileges;

(6) Recommending reduction of staff category or limitation of any staff prerogatives; or

(7) Recommending suspension or revocation of staff membership.

Any minority views may be reduced to writing and transmitted to the CEO and the practitioner with the majority report.

### 8.1(e)  Actions that Lead to Fair Hearing Plan

Any action by the MEC pursuant to Section 8.1(d)(5), (6), or (7) or probation under (d)(4) (where such action materially restricts a practitioner's exercise of privileges), or any combination of such actions, shall be considered an "adverse action" entitling the practitioner to the procedural rights as specified in the Fair Hearing Plan.

### 8.1(f)  Other Actions

If the MEC's recommended action is favorable or is a recommended action as is provided in Section 8.1(d)(1), (2), (3), or in (d)(4) (where such action does not materially restrict a practitioner's exercise of privileges), such recommendation, together with all supporting documentation, shall be transmitted directly to the Board for final action. The Fair Hearing Plan shall not apply to such actions, unless the Board takes action contrary to the MEC recommendations, as described in 8.1(g).

### 8.1(g)  Board Action

When the Board takes adverse action contrary to a favorable MEC recommendation or to a recommendation that was otherwise not adverse, the practitioner shall be entitled to a hearing under the Fair Hearing Plan and to the other procedural rights as specified in the Plan.

## 8.2  SUMMARY SUSPENSION

### 8.2(a)  Criteria & Initiation

Notwithstanding the provisions of Section 8.1 above, whenever a practitioner's conduct may require that immediate action be taken to protect the life, well-being, health or safety of any patient, employee or other person, then the CEO in conjunction with the Chief of Staff or the Chair of the practitioner's department, shall have the authority to summarily suspend all or any portion of the practitioner's clinical privileges immediately upon imposition. The CEO shall, on behalf of the imposer of such suspension, promptly give special notice of the suspension to the practitioner.

Immediately upon the imposition of summary suspension, the Chief of Staff shall designate a physician with appropriate clinical privileges to provide continued medical care for the

suspended practitioner's patients still in the Hospital. The wishes of the patient shall be considered, if feasible, in the selection of the assigned physician.

It shall be the duty of all Medical Staff members to cooperate with the Chief of Staff and the CEO in enforcing all suspension and in caring for the suspended practitioner's patients.

#### 8.2(b)   Medical Executive Committee Investigation and Action

Within seventy-two (72) hours after such summary suspension, a meeting of the MEC shall be convened to review and consider the action taken. The MEC may recommend modification, ratification, continuation with further investigation or termination of the summary suspension.

#### 8.2(c)   Procedural Rights

If the summary suspension is terminated or modified such that the practitioner's privileges are not materially restricted, the matter shall be closed and no further action shall be required.

If the summary suspension is continued for purposes of further investigation the MEC shall reconvene within fourteen (14) days of the original imposition of the summary suspension and shall modify, ratify or terminate the summary suspension. The practitioner shall be entitled to an informal interview as provided in Section 8.9.

Upon ratification of the summary suspension or modification, which materially restricts the practitioner's clinical privileges, the practitioner shall be entitled to the procedural rights provided in the Fair Hearing Plan. The terms of the summary suspension as sustained or as modified by the MEC shall remain in effect pending a final decision by the Board.

### 8.3   AUTOMATIC SUSPENSION

#### 8.3(a)   License

A practitioner whose license to practice in Arkansas is revoked or suspended shall immediately and automatically be suspended from the staff and practicing in the Hospital. The member will not have the right of hearing or appeal as provided in the Fair Hearing Plan. Upon the reinstatement of the Practitioner's license by the appropriate licensing agency, the question of reinstating the practitioner shall be considered by the MEC at the practitioner's request. Should the MEC decline to reinstate, then the provisions of the Fair Hearing Plan shall apply.

#### 8.3(b)   Drug Enforcement Administration (DEA) Registration Number

A practitioner whose DEA registration number is revoked, or suspended, shall immediately and automatically be divested of his/her right to prescribe scheduled drugs. Upon the reinstatement of the Practitioner's number, the question of reinstating the practitioner's prescribing authority shall be considered by the MEC at the practitioner's request. Should the MEC decline to reinstate, then the provisions of the Fair Hearing Plan shall apply.